IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH WILLIAMS, | ) |
| | ) No. 3:12-cv-01071 |
| Plaintiff, | ) |
| | ) Judge Nixon |
| v. | ) Magistrate Judge Brown |
| | ) |
| ELECTROLUX HOME PRODUCTS, INC., | ) JURY DEMAND |
| | ) |
| Defendant. | ) |

## ORDER

Pending before the Court is Defendant Electrolux Home Products, Inc.'s Motion for Summary Judgment ("Motion"). (Doc. No. 10.) For the reasons stated below, Defendant's Motion is **GRANTED**.

I. BACKGROUND

A. *Factual History*[1]

Defendant Electrolux Home Products, Inc., operates a plant in Springfield, Tennessee, where it manufactures electric and gas ranges. Plaintiff Deborah Williams, born on October 7, 1958, began working for Defendant's predecessor, Tappan, at its Springfield plant in 1976, and became an employee of Defendant in 1980 when Defendant purchased the plant. Plaintiff worked in various positions at the plant prior to moving to her final position as laborer in the serial tag room in March 2004. Plaintiff's job duties included packing warranty literature and operation manuals for ranges into plastic bags. Plaintiff's supervisor during the relevant time period was PaRita Osborne, who reported to Dianna Swain. Plaintiff has carpel tunnel and had a disc removed from her lower back, for which she filed a worker's compensation claim with

---

[1] Unless otherwise indicated, the facts in this section are undisputed and taken from Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. No. 16) and Defendant's Response to Plaintiff's Statement of Undisputed Material Facts (Doc. No. 19).

1

Defendant in 1997. Subsequently, Plaintiff complained to the Human Resources Manager that she was having difficulties with her back and hands and was unable to move boxes in the warehouse. However, after moving to the serial tag room in 2004, Plaintiff did not ask for any changes or assistance in doing her job because of a disability. Plaintiff was not required to lift boxes in excess of fifty pounds and was not disciplined for failing to do so. Plaintiff also agrees that Defendant accommodated any lifting restrictions she had.

At some point, Plaintiff complained to Human Resources, Osborne, and Swain about verbal arguments among employees in the serial tag room. About three or four months prior to Plaintiff's termination on August 11, 2011, Osborne and Swain held a meeting with Plaintiff and the other employees in the serial tag room to discuss the recurring arguments. During the meeting, Swain and Osborne asked Plaintiff for her input on how to stop the arguing, to which Plaintiff responded that employees should be disciplined or terminated. Plaintiff also states she was told by Swain at this meeting that company policy provided that "as long as you didn't put your hands on anybody, you could argue with them."

On August 9, 2011, Plaintiff had an altercation with her co-worker, Elizabeth Denise Brown. Plaintiff asked Brown if she had said something, and Brown replied "not to you." Plaintiff then asked if Brown had said something "about" her.[2] When Brown asked Plaintiff why she thought Brown was talking about her, Plaintiff responded, "Because I fucking heard you." Plaintiff and Brown then began arguing with each other, and the confrontation lasted approximately five to ten minutes. At some point during the altercation, Osborne entered the

---

[2] The Court notes the Affidavit of Plaintiff, submitted with Plaintiff's Response, contradicts this statement; in particular, Plaintiff states in her Affidavit that she initially asked Brown if Brown was talking *to* her, which Brown then mischaracterized as Plaintiff asking Brown if she was talking *about* her. (Doc. No. 17 ¶3.) However, as Defendant correctly notes, this contradicts both Plaintiff's earlier deposition testimony and her Response to Defendant's Statement of Undisputed Facts. (*See* Doc. Nos. 16 at 7; 11-2 at 39.) As Plaintiff has provided no justification for her change in position, the Court finds it appropriate to disregard this new assertion in Plaintiff's Affidavit. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (explaining district courts may "rightly ignore" directly contradictory positions taken by a party in an affidavit in response to a motion for summary judgment).

serial tag room. Osborne states she heard Plaintiff tell Brown that Plaintiff "was going to kick her mother fucking ass," which Plaintiff disputes saying. Osborne told Plaintiff and Brown to "quit arguing," and eventually Osborne called Liz Johnson and Tom Johnson, both supervisors with Defendant, to help with the situation in the serial tag room. Osborne and the Johnsons subsequently escorted Plaintiff and Brown to the Human Resources Office. Plaintiff was told she was suspended for three days and turned in her badge. Both Plaintiff and Brown were sent home following their meetings with Human Resources.

The same day, Veronica Johnson, Human Resources Supervisor for Defendant, began an investigation into the altercation. During the investigation, Veronica Johnson spoke with Plaintiff, Brown, and other employees. Veronica Johnson took statements from multiple employees, but Plaintiff initially refused to give a statement because she "didn't want to lose [her] job." Following Veronica Johnson's investigation, Plaintiff was terminated and Brown was suspended and placed on probation. When Plaintiff returned from her suspension on August 11, 2011, Veronica Johnson informed Plaintiff she had been terminated because of her threat to Brown. Plaintiff was fifty-two years old at the time of her termination.

*B. Procedural History*

Plaintiff filed this action against Defendant on October 18, 2012, bringing claims for age discrimination under the Age Discrimination in Employment Act ("ADEA") and disability discrimination under the Americans with Disabilities Act ("ADA"). (Doc. No. 1 ¶¶ 20–29.)

Defendant filed its Motion for Summary Judgment on August 26, 2013 (Doc. No. 10), with a Memorandum in Support (Doc. No. 11), a Statement of Undisputed Facts (Doc. No. 11-1), and three exhibits (Doc. Nos. 11-2 to 11-4). Plaintiff filed a Response on October 7, 2013 (Doc. No. 14), with a Response to Defendant's Statement of Undisputed Facts (Doc. No. 16), a Statement of Undisputed Material Facts (Doc. No. 15), a supporting affidavit (Doc. No. 17), and

four exhibits (Doc. Nos. 14-1 to 14-2; 17-1 to 17-2). Defendant filed a Reply on October 21, 2013 (Doc. No. 18), with a Response to Plaintiff's Statement of Undisputed Material Facts (Doc. No. 19) and one exhibit (Doc. No. 19-1).

## II.  LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330–31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

4

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

III. ANALYSIS

Plaintiff has asserted two claims as the basis for her illegal discharge lawsuit against Defendant: (1) age discrimination under the ADEA and (2) discrimination based on disability under the ADA. The Court evaluates Plaintiff's claims in turn.

A. *ADEA Claim*

An employer is prohibited from discharging an individual "because of such individual's age." 29 U.S.C. § 623(a)(1) (2012). In cases brought under § 623(a)(1), the plaintiff has "the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). "A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). The parties dispute whether Plaintiff has produced direct evidence of age discrimination. Accordingly, the Court first analyzes whether Plaintiff has produced such direct evidence.

1. Direct Evidence

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Worthy v. Mich. Bell Tel. Co.*, 472 F. App'x 342, 347 (6th Cir. 2012) (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). In other words, "[d]irect evidence of discrimination is that evidence which, if believed, requires the

5

conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger*, 579 F.3d at 620 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotation marks omitted)). However, unlike discrimination claims under Title VII, the plaintiff cannot satisfy her burden by simply establishing age was a "motivating factor;" thus, even with direct evidence, the plaintiff retains the burden of persuasion to prove "by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Id.* at 620–21 (quoting *Gross*, 557 U.S. at 177–78).

Plaintiff, in this case, alleges that her direct evidence of age discrimination is that she was terminated while her younger co-worker—who Plaintiff alleges "instigated the argument"—was not terminated. (Doc. No. 14 at 16.) However, Plaintiff's bare argument that such evidence constitutes "direct evidence" falls far short of the Sixth Circuit's standard. The typical presentation of direct evidence of discrimination is in the form of discriminatory remarks by a supervisor. *See, e.g.*, *Wexler*, 317 F.3d at 570–72 (finding comments by a supervisor referring to the plaintiff as "a bearded, grumpy old man," "pops," and "old man," along with other comments referencing the plaintiff's age and the youth of plaintiff's replacement, were direct evidence of age discrimination). While the Court acknowledges there may be other types of evidence that could satisfy the standard for direct evidence, the evidence presented by Plaintiff in this matter fails as a matter of law because, even taking Plaintiff's allegations as true, they do not *require* the conclusion that Plaintiff was discriminated against based on her age. While Plaintiff's evidence that Brown was not terminated and was younger than her has the potential of raising an *inference* of discrimination, standing alone it cannot show Plaintiff's age was the "but-for" cause of her termination. Accordingly, the Court finds Plaintiff has failed to produce direct evidence of age discrimination.

## 2. Indirect Evidence

In the absence of direct evidence, ADEA claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). Under *McDonnell Douglas*, the plaintiff must first make out a prima facie case of discrimination; if she is successful, the burden then shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason' for the termination." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Id.* (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)).

### *(a) Prima Facie Case*

To establish a prima facie case of age discrimination a plaintiff must present evidence of the following elements: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard*, 698 F.3d at 283 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). A plaintiff's "burden at the prima facie state is 'not onerous' and 'poses a burden easily met.'" *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)). Ordinarily, the fourth factor is established by showing the plaintiff was "replaced by a younger worker." *See, e.g., Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008). However, the plaintiff may also satisfy this fourth element "by showing that similarly situated non-protected employees were treated more favorably." *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 511 (6th Cir. 2004). To be considered "similarly-situated," the employees whom the plaintiff selects "to compare his/her treatment must have dealt with the same supervisor, have been subject to the

same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Here, the parties dispute only whether Plaintiff has met her burden to establish the fourth element of her prima facie case. (*See* Doc. Nos. 11 at 3–4; 14 at 16–17.) Specifically, Defendant argues Plaintiff is not similarly situated to other employees who were not fired as Plaintiff made a threat of physical harm while other relevant comparative employees who engaged in arguments did not. (Doc. No. 11 at 4.) Plaintiff responds that she was similarly situated to other employees who engaged in verbal arguments and were not fired, in particular Brown, and Plaintiff disputes she made any threat of physical harm. (Doc. No. 14 at 16–17.)

The Court notes the Sixth Circuit recently cautioned district courts against conflating the standards of proof presented at different stages of *McDonnell Douglas*, in particular using an inappropriately high standard for the establishment of a prima facie case. *See Provenzano*, 663 F.3d at 813–14. The evaluation of whether a plaintiff has satisfied the four prongs of her prima facie case "must be conducted independently of [the employer's] proffered nondiscriminatory reason" and is less "rigorous" than the inquiry at later stages of *McDonnell Douglas*. *Id.* Plaintiff has presented evidence that both her and Brown worked under the same supervisor and held similar positions. (Doc. No. 11-2 at 16.) Further, Plaintiff has put forward evidence that there is a dispute as to whether she made a threat of physical harm. (Doc. No. 11-2 at 43.) If Plaintiff's alleged threat of physical harm was undisputed and unique to Plaintiff, the Court could then potentially find such threat to be a "differentiating or mitigating circumstance" preventing Plaintiff from establishing a prima facie case of discrimination under the ADEA. However, as such fact is disputed by Plaintiff and Plaintiff has shown she was otherwise

8

similarly situated to Brown who was younger than her, the Court finds Plaintiff has produced sufficient evidence to meet her prima facie burden.

Accordingly, Defendant must produce a legitimate, nondiscriminatory reason for discharging Plaintiff, which Plaintiff must then show is pretext for improper motives, here, Plaintiff's age.

### (b) Pretext

Defendant argues Plaintiff's threat of physical harm is a legitimate, nondiscriminatory reason for terminating Plaintiff. Specifically, Defendant contends Plaintiff was terminated because she made a threat of physical harm to Brown, whereas Brown was "passive" and made no physical threats. (Doc. No. 11 at 5–6.) Defendant supports its contention by identifying three witnesses, included Plaintiff's supervisor, Osborne, who informed Defendant during its investigation that she witnessed Plaintiff tell Brown that Plaintiff "was going to kick her mother fucking ass." (Doc. Nos. 11 at 5; 18 at 5.) As Defendant has presented a legitimate, nondiscriminatory reason for discharging Plaintiff, the burden shifts to Plaintiff to show such reason was pretextual.

At this third step of *McDonnell Douglas*, a plaintiff "must produce sufficient evidence from which a jury could reasonably reject" the employer's stated reason for terminating the plaintiff. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). "In order to prove pretext . . . the plaintiff must 'introduce admissible evidence to show that the proffered reason was not the true reason for the employment decision and that *discriminatory animus* was the true motivation.'" *Grace v. USCAR*, 521 F.3d 655, 677–78 (6th Cir. 2008) (quoting *Barnes v. United Parcel Serv.*, 366 F. Supp. 2d 612, 616 (W.D. Tenn. 2005) (emphasis added) (internal quotation marks omitted)). A plaintiff can demonstrate pretext in any of three ways, by showing: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate

9

the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen*, 580 F.3d at 400. However, these three categories serve only as a "convenient way" to marshal evidence on the ultimate inquiry of whether the employer took adverse action against the employee "for the stated reason or not." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen*, 580 F.3d at 400). The question at summary judgment is then specifically "whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." *Chen*, 580 F.3d at 400 n.4.

While Plaintiff has identified the above three types of pretext generally used by the Sixth Circuit in establishing pretext, she has not identified a specific method for attacking Defendant's legitimate reason. In reviewing Plaintiff's arguments, the Court interprets Plaintiff's briefing as essentially putting forward arguments under the first and third types of pretext.[3] In particular, Plaintiff contends: (1) she did not threaten physical harm to Brown, therefore Defendant's stated reason has no basis in fact; and (2) Defendant did not terminate other workers for similar conduct, therefore the stated reason is insufficient to motivate its decision to terminate Plaintiff. (Doc. No. 14 at 4, 17–18.) Defendant responds that (1) it reasonably relied on statements from other employees in determining Plaintiff had made a threat of physical harm, and (2) Plaintiff has produced no admissible evidence of other employees engaging in similar conduct, i.e. threatening physical harm or actually having a physical altercation, and not being terminated. (Doc. No. 18 at 5.)

Where the plaintiff seeks to show the employer's reason had no basis in fact, plaintiff's showing is "essentially an attack on the credibility of the employer's proffered reason." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Joostberns v. United*

---

[3] While heeding the Sixth Circuit's caution against rigidly applying these categories, the Court finds them to be useful in organizing the arguments presented by Plaintiff in this case.

10

*Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006) (citations and internal quotation marks omitted)). "Although courts should resist attempting to micro-manage the process used by employers in making their employment decisions, neither should they blindly assume that an employer's description of its reasons is honest." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). However, under the "honest belief doctrine," a court evaluating an employer's proffered reason for an adverse employment action should determine "whether the employer made a reasonably informed and considered decision," but does not need to find "that the decisional process used by the employer [was] optimal or that it left no stone unturned." *Id.* "The employer . . . must point to particularized facts upon which it reasonably relied." *Tingle*, 692 F.3d at 531. If the employer is able to do so and shows that it "reasonably and honestly relie[d] on [those] particularized facts in making an employment decision," the employee cannot prove such reason had no basis in fact for purposes of establishing pretext, "even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Id.* (quoting *Chen*, 580 F.3d at 401 (internal quotation marks omitted)).

To overcome the defendant's proffered honest belief in a nondiscriminatory reason, "the plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendant['s] explanation and infer that the defendant did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Id.* (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001)) (internal quotation marks, brackets, and ellipsis omitted). "An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Seeger*, 681 F.3d at 285 (quoting *Joostberns*, 166 F. App'x at 791).

11

Defendant argues that it had an honest belief that Plaintiff made a threat of physical harm. (Doc. No. 18 at 4–5.) In particular, Defendant contends that it reasonably relied on the statements provided to it by Plaintiff's supervisor and two of Plaintiff's co-workers attesting to Plaintiff stating she was going to "kick [Brown's] mother fucking ass." (*Id.* at 5.) Plaintiff responds that these three alleged witnesses could not have heard the specific substance of Plaintiff and Brown's argument due to the noise in the area where the argument occurred. (Doc. No. 14 at 5.)

The Court finds Defendant has pointed to sufficient "particularized facts," i.e. the statements of Plaintiff's supervisor and two co-workers, on which it reasonably relied in determining Plaintiff had made a threat of physical harm. While Plaintiff may be able to show Defendant had not *conclusively* established Plaintiff made such a threat based on the other employee statements not attesting to such conduct, Defendant must only show that it *reasonably* relied on the information before it at the time of its decision to terminate Plaintiff.

As the Sixth Circuit has explained, the "key inquiry is whether the employer made a reasonably informed and considered decision before taking the complained-of action." *Tingle*, 692 F.3d at 531 (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007)) (internal quotation marks and ellipsis omitted). Here, Defendant brought both Plaintiff and Brown into the human resources department to discuss the incident and sent each of them home following the argument. Defendant then conducted an investigation in which it interviewed Plaintiff, Brown, and twelve other employees, three of whom stated Plaintiff had made a threat of physical harm while none stated Brown had made such a threat.[4] (Doc. No. 17-

---

[4] The Court notes Brown's statement during the investigation in this regard was that "[Plaintiff] was cursing at me threating [sic] me to do something," (Doc. No. 17-2 at 3) which the parties dispute how to interpret. However, the Court finds this ambiguous statement does not undermine Defendant's honest belief Plaintiff had made a threat of physical harm based on the statements of the other three employees.

12

2.) Following the investigation, Defendant argues it terminated Plaintiff based on its honest belief she had made a physical threat and suspended Brown for disorderly conduct. (Doc. No. 18 at 5.) The Court finds such actions show Defendant engaged in a thorough investigation, which, although not lengthy, provided a sufficient, reasonable basis for its belief Plaintiff had made a threat of physical harm.

Further, the Court finds Plaintiff has failed to produce sufficient evidence from which a jury could reasonably reject Defendant's assertion and find Defendant did not honestly believe its proffered reason. Plaintiff's only proffered evidence to dispute the other employees' claims that she made a threat is they could not have heard such a threat because of the noise level in the room. (Doc. No. 14 at 5.) However, Plaintiff's argument is only a "bare assertion" without any support in the record, which is insufficient to create a genuine issue of material fact. *See Seeger*, 681 F.3d at 285. Accordingly, the Court finds Plaintiff cannot establish Defendant's proffered reason was pretext for illegal discrimination based on the reason having no basis in fact.

Where a plaintiff seeks to show the employer's proffered reason for her termination was insufficient to motivate its decision, the plaintiff must establish that other, similarly-situated employees who were not in the protected class were not subject to the same adverse action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger*, 579 F.3d at 621. The key question under this analysis is whether "other employees who had engaged in the conduct that is claimed to be the legitimate nondiscriminatory reason for the termination" were treated differently than the plaintiff. *Singleton v. Select Specialty Hospital-Lexington, Inc.*, 391 F. App'x 395, 403 (6th Cir. 2010); *see also Manzer*, 29 F.3d at 1084 (explaining that a plaintiff's evidence that the employer's proffered reason was insufficient to motivate its decision to terminate her usually involves establishing that

13

employees outside the protected class "engaged in substantially identical conduct" to what the employer has offered as its legitimate, nondiscriminatory reason for terminating the plaintiff).

Here, Defendant's proffered reason for Plaintiff's termination is her alleged threat of physical harm to Brown, which the Court has found Plaintiff cannot establish a genuine issue of material fact as to whether such reason was honestly believed by Defendant. Plaintiff responds that other co-workers who had engaged in similar conduct, specifically verbal arguments, were not terminated, and further alleges that employees involved in a "knock-down drag out" fight were not terminated. (Doc. No. 14 at 7.) Plaintiff also states Swain told Plaintiff that employees could do anything other than "put [their] hands on anybody" without being terminated, arguing such a statement shows any conduct short of physical violence could not motivate an employee's termination under this policy. (Doc. No. 14 at 3–4, 18.)

The Court finds Plaintiff has failed to produce any evidence showing similarly situated co-workers, i.e. employees who made threats of physical harm, were not subject to termination as Plaintiff was. Plaintiff's only evidence of other employees engaging in similar conduct is her own testimony that she had heard "rumors" of co-workers getting into fights (Doc. No. 11-2 at 52–53) and knew from talking with her son about another employee who "yelled" and "cursed" at him and was not subsequently terminated (Doc. No. 17 at 3). The Court finds such speculative, hearsay evidence is insufficient to create a genuine issue of material fact. Moreover, Plaintiff's allegation concerning a fight involving her son references a verbal argument and does not allege that a threat of physical harm was made. Further, even accepting as true Plaintiff's allegation that Swain distinguished between verbal arguments and physical fights for the purposes of employee discipline, this policy merely demonstrates that Defendant considered physical harm as distinct from verbal arguments, and Defendant states that Plaintiff's threat *of physical harm* is why she was disciplined in a different manner than other employees. On its

14

own, therefore, Swain's comment is insufficient to create a genuine issue of material fact as to whether a threat of physical harm was sufficient to motivate Defendant's decision.

The Court thus finds Plaintiff has failed to produce sufficient evidence from which a jury could reasonably find Defendant's proffered reason for her termination was pretext for age discrimination. Accordingly, Plaintiff's claim for discriminatory discharge under the ADEA is **DISMISSED.**

*B. ADA Claim*

An employer is prohibited from discharging an employee "because of the disability of such . . . employee." 42 U.S.C. § 12112(b)(1) (2012). Similar to the ADEA, the employee must show her disability was the "but-for" cause of her termination to prevail on an ADA claim. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012) (en banc). A plaintiff can establish a claim for discrimination under the ADA by either direct or indirect evidence. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996), *overruled on other grounds by Lewis*, 681 F.3d at 317.

For the same reasons the Court determines Plaintiff has failed to produce direct evidence of age discrimination, the Court also finds Plaintiff has failed to produce direct evidence of disability discrimination. *See supra* Part III.A.1. Accordingly, the Court turns to whether Plaintiff has produced sufficient indirect evidence of discrimination to establish her claim.

Where the plaintiff produces indirect evidence of discrimination on the basis of disability, ADA claims are analyzed under the familiar burden-shifting framework of *McDonnell Douglas*, 411 U.S. 792. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). Under *McDonnell Douglas*, the plaintiff must first make out a prima facie case of discrimination; if she does so, the burden shifts to the employer to articulate a non-discriminatory reason for the termination, which the plaintiff must the prove is pretext for the underlying discrimination. *Id.* (citing *McDonnell*

15

*Douglas*, 411 U.S. at 802–04). In order to establish a prima facie case for discrimination under the ADA, the plaintiff must show "1) he or she is disabled; 2) otherwise qualified for the position, with or without a reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Id.* (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007), *overruled on other grounds by Lewis*, 681 F.3d 312).

The parties dispute whether Plaintiff can establish a prima facie case of disability discrimination under the ADA. In particular, Defendant argues Plaintiff cannot establish that (1) she was disabled, or regarded as disabled by Defendant; or (2) Defendant replaced Plaintiff after her termination. (Doc. Nos. 11 at 8; 18 at 3–4.) Plaintiff responds that she has produced evidence sufficient to show she was disabled, or at least regarded as disabled by Defendant. (Doc. No. 14 at 13–14.) However, even assuming *arguendo* that Plaintiff has met her burden to establish a prima facie case, Plaintiff must still show Defendant's proffered non-discriminatory reason, i.e. her alleged threat of physical harm, was pretextual. Plaintiff's arguments in support of her ADA claim mirror those supporting her ADEA claim with the only additional evidence presented going to the nature of her alleged disability and Defendant's knowledge of such disability. (*See id.* at 11–16.) As such, the Court finds Plaintiff has failed to produce sufficient evidence to show Defendant's proffered non-discriminatory reason was pretext for disability discrimination, for the same reasons Plaintiff could not show such reason was pretext for age discrimination. *See supra* Part III.A.2.b. Accordingly, Plaintiff's claim for discriminatory discharge under the ADA is **DISMISSED.**

## IV. CONCLUSION

For the above-stated reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. No. 10.) Accordingly, the case is **DISMISSED with prejudice**. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this 12 day of February, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT